**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

PREMIER ASSURANCE                                  Chapter 15
GROUP SPC LTD.,
                                                   Case No.  20-20230-RAM
            Debtor in a Foreign Proceeding.
_____/

JEFFREY STOWER and JASON ROBINSON,
as Foreign Representatives of PREMIER
ASSURANCE GROUP SPC LTD,

            Plaintiffs,

v.                                                 Adv. No.  _____-RAM

LYNCPAY LLC, PREMIER ASSURANCE
ADVISORS LLC, PREMIER ASSURANCE
GROUP, LLC, PA GROUP ADMINISTRATION
CORP., PA MARKETING LTD., PREFERRED
BUSINESS SERVICES, INC., PROVIDENCE
INSURANCE COMPANY, I.I acting for and on
behalf of protected cell PREMIER ASSURANCE
SEGREGATED PORTFOLIO PUERTO RICO
SAP, BEAST CAPITAL LLC, LEONARDO L.
CORNIDE, JORGE E. FALCON, AND JAVIER
JIMENEZ (also known as JAVIER JIMENEZ,
JR.),

            Defendants.
_____/

**COMPLAINT FOR ACCOUNTS STATED, UNJUST ENRICHMENT,**
**BREACH OF FIDUCIARY DUTY, AND OTHER RELIEF**

        Plaintiffs, Jeffrey Stower and Jason Robinson, in their capacity as the duly authorized and

appointed Foreign Representatives and Joint Official Liquidators (the "Foreign Representatives

or "JOLs") of the Debtor, Premier Assurance Group SPC Ltd. ("PAG SPC" or the "Debtor"), by

and through undersigned counsel, hereby sue Lyncpay LLC, ("Lyncpay"), Premier Assurance Advisors LLC ("PAA LLC"), Premier Assurance Group, LLC ("PAG LLC"), PA Group Administration Corp. ("PAGA Corp"), PA Marketing Ltd. ("PA Marketing"), Preferred Business Services, Inc. ("PBS, Inc."), Providence Insurance Company, I.I ("Providence") acting for and on behalf of protected cell Premier Assurance Segregated Portfolio Puerto Rico SAP ("PAPR") (collectively, the "Affiliate Defendants"), Beast Capital LLC ("Beast Capital"), Leonardo L. Cornide ("Cornide"), Jorge E. Falcon ("Falcon," together with Cornide, the "Founder Defendants"), and Javier Jimenez ("Jimenez," together with the Founder Defendants, the "Insider Defendants," and collectively with the Affiliate Defendants and Beast Capital, "Defendants") and allege as follows:

## NATURE OF THIS ACTION

1.      This adversary proceeding seeks legal and equitable relief against all Defendants relating to monies owed by the Affiliate Defendants to the Debtor, for and on behalf of (i) itself (the "Core"), (ii) its segregated portfolio, Premier Assurance Segregated Portfolio ("PASP"), and (iii) its segregated portfolio, Global Assurance Segregated Portfolio ("GASP"), in an aggregate amount of **not less than $48,437,142.25** (the "Related-Party Balances").

2.      As more fully described below, the Insider Defendants caused the Affiliate Defendants and the Debtor, all of which the Insider Defendants directly or indirectly owned or controlled, to engage in a series of transactions or purported transactions, pursuant to which the Debtor transferred its money or conferred other benefits upon the Affiliate Defendants. Often these transactions were ostensibly for various services or other business functions provided to the Debtor by the Affiliate Defendants. In reality, the Debtor received little or no value in exchange for the monies and other benefits it conferred. In many cases, the Insider Defendants simply dispensed with the fig leaf of an ostensible business purpose and caused the Debtor to transact with the

2

Affiliate Defendants for no business purpose whatsoever. In all cases, the benefits conferred upon the Affiliate Defendants redounded to the ultimate benefit of the Founder Defendants.

3.     All of these transactions and the Affiliate Defendants' obligations to repay the Debtor are recorded in books and records created and maintained on a collective basis for both the Affiliate Defendants and the Debtor (for and on behalf of the Core, PASP, and GASP). These books and records show the Affiliate Defendants' agreement and promise to repay the Debtor (for and on behalf of the Core, PASP, and GASP) the total amount of $28,345,149.02, comprised of the following amounts:

    a.   $14,700,245.41 by Lyncpay;

    b.   $6,075,420.21 by PAA LLC;

    c.   $3,352,403.35 by PAG LLC;

    d.   $871,576.64 by PAGA Corp;

    e.   $857,219.20 by PA Marketing; and

    f.   $2,488,284.21 by PBS (collectively, the "Affiliate Balances").

4.     In addition to the Affiliate Balances, one or more of the Affiliate Defendants owe further substantial sums to the Debtor. These include at least $16,860,000.00 owed to the Debtor (for and on behalf of PASP) by Defendant PA Marketing for transactions with no business purpose, at least $1,922,679.27 owed to the Debtor (for and on behalf of GASP) by Defendant PAA for transactions with no business purpose, and $1,309,313.96 owed to the Debtor (for and on behalf of PASP) by Providence (for and on behalf of PAPR) for funding of its start-up with no benefit to or business purpose for PASP. (For avoidance of doubt, the Related-Party Balances are comprised of Affiliate Balances and the amounts described in this paragraph.)

5.      Furthermore, in many instances the Affiliate Defendants served as conduits to extract value derived from the Related-Party Balances to and for the benefit of the Founder Defendants and Defendant Beast Capital. In these instances the Founder Defendants obtained benefits from the Debtor for no consideration or business purpose, and in violation of and/or for the improper purpose of circumventing the Debtor's dividend policy and regulatory requirements.

6.      More generally, the Insider Defendants breached their fiduciary duties to the Debtor by causing or assisting in the creation of the Related-Party Balances for no consideration or business purpose, without providing for adequate means of repayment, for the purpose of looting the Debtor and enriching the Founder Defendants at the expense of the Debtor, and/or for the improper purpose of circumventing the Debtor's dividend policy and regulatory requirements, all at a time when all of the Insider Defendants stood on both sides of these transactions as fiduciaries of both the Debtor and the Affiliate Defendants and when the Founder Defendants stood to profit personally.

7.      Finally, the Foreign Representatives seek an accounting of the Related-Party Balances as more fully set forth in this Complaint.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over the instant action pursuant to Sections 157 and 1334 of Title 28 of the United States Code.

9.      Venue is proper in this District pursuant to Section 1409 of Title 28 of the United States Code, because the underlying Chapter 15 case involving the Debtor is pending in this District.

## THE PARTIES

10.     Plaintiff Jeffrey Stower is an individual residing in the Cayman Islands who has been appointed by the Grand Court of the Cayman Islands (the "Cayman Court") as a Joint Official

Liquidator of the Debtor in FSD Cause No. 264 of 2020 (ASCJ) (the "Cayman Proceeding"), and who has been recognized by this Court as one of the Debtor's Foreign Representatives in the underlying Chapter 15 case in which this adversary proceeding is filed. Mr. Stower brings this action solely in his capacity as Foreign Representative, and not individually, under the standing granted to him by Section 1509(b)(1) of the Bankruptcy Code.

11.     Plaintiff Jason Robinson is an individual residing in the Cayman Islands who has also been appointed by the Cayman Court as a Joint Official Liquidator of the Debtor in the Cayman Proceeding, and who has been recognized by this Court as one of the Debtor's Foreign Representatives in this Chapter 15 Case. Mr. Robinson brings this action solely in his capacity as Foreign Representative, and not individually, under the standing granted to him by Section 1509(b)(1) of the Bankruptcy Code.

12.     The Debtor is an exempted segregated portfolio company incorporated under the laws of the Cayman Islands on June 29, 2012.

13.     Defendant Lyncpay is a Florida limited liability company, with its principal address at 2020 Ponce De Leon Blvd., Suite 1107, Coral Gables, FL.

14.     Defendant PAA LLC was a Florida limited liability company, with its principal address at 1901 Ponce De Leon Blvd., Coral Gables, FL. On or about April 30, 2022, Defendant PAA was purported to be the subject of a voluntary dissolution.

15.     Defendant PAG LLC is a Florida limited liability company, with its principal address at 2020 Ponce De Leon Blvd., Suite 1107, Coral Gables, FL.

16.     Defendant PAGA Corp is an assumed named for Defendant Lyncpay or, in the alternative, is a Panama corporation, with its principal address at 2020 Ponce De Leon Blvd., Suite

1107, Coral Gables, FL. Defendant PAGA Corp was also from time to time known or referred to as "Premier Assurance Group Administration Corp."

17.    Defendant PA Marketing is a British Virgin Islands company, with its principal address at 2020 Ponce De Leon Blvd., Suite 1107, Coral Gables, FL.

18.    Defendant PBS, Inc. is a Florida corporation, with its principal address at 2020 Ponce De Leon Blvd. Suite 1107, Coral Gables, FL 33134.

19.    Defendant Providence is a Puerto Rican insurance company acting for and on behalf of its protected cell (PAPR), with its registered address at 954 Ave. Ponce de Leon, Suite 802, San Juan, Puerto Rico, 00807. Business and other operations of PAPR are conducted at 2020 Ponce De Leon Blvd. Suite 1107, Coral Gables, FL 33134.

20.    Defendant Beast Capital is a Florida limited liability company, with its principal address at 2020 Ponce de Leon Blvd. #1107, Coral Gables, FL 33134.

21.    Defendant Cornide is an individual who, upon information and belief, resides at 4635 Granada Blvd Coral Gables, FL 33146.

22.    Defendant Falcon is an individual who, upon information and belief, resides at 11301 SW 61 CT, Pinecrest, FL.

23.    Defendant Jimenez is an individual who, upon information and belief, resides at 9827 NW 32nd Street, Doral, FL 33172. Jimenez is licensed as a certified public accountant ("CPA") in the state of Florida.

## PROCEDURAL BACKGROUND

24.    On September 21, 2020 (the "Petition Date"), the Foreign Representatives commenced the underlying Chapter 15 Case in which this adversary proceeding arises, by filing a Petition seeking, among other things, recognition of the Cayman Proceeding as a foreign main proceeding under Chapter 15 of the Bankruptcy Code, as well as various forms of relief including

6

"entrusting the administration or realization of all or part of the debtor's assets within the territorial jurisdiction of the United States to the [F]oreign [R]epresentative(s)" under Section 1521(a)(5) of the Bankruptcy Code.

25.     On November 17, 2020, this Court entered its recognition order [Chapter 15 Case ECF No. 45] (the "Recognition Order"). Among other things, the Recognition Order grants recognition to the Cayman Proceeding as a foreign main proceeding, and grants relief to the Foreign Representatives as requested. Specifically, the Recognition Order states that the Foreign Representatives "may operate the [D]ebtor's business and may exercise the rights and powers of a trustee under and to the extent provided by sections 363 and 552 of the Bankruptcy Code." Recognition Order ¶ 4(b).

26.     The Recognition Order entrusts the JOLs with the right to bring the causes of action set forth herein on behalf of the Debtor as a form of additional relief under Section 1521 of the Bankruptcy Code, entrusting the Foreign Representatives "with the administration and realization of all of the Debtor's assets within the territorial jurisdiction of the United States." Recognition Order ¶ 5(c). Pursuant to Section 1509(b)(1), the Foreign Representatives have the capacity to sue and be sued in this Court.

27.     On April 21, 2021, the Foreign Representatives filed a Notice of Change of Status to reflect entry of an Order on April 19, 2021 by the Cayman Court, ordering that the Debtor be placed into official liquidation and wound up in accordance with the Cayman Islands Companies Act (the "Official Liquidation Order"). Among other things, the Official Liquidation Order appointed the Foreign Representatives as JOLs of the Company and, consistent with the prior orders of the Cayman Court, authorized them to secure or collect the assets of the Debtor.

28.     Accordingly, under the laws of both the Cayman Islands and the United States, the JOLs have the standing, right, power and duty to bring the claims and seek relief on behalf of the Debtor and its segregated portfolios as set forth in this Complaint.

## GENERAL FACTUAL ALLEGATIONS

**A.      The Debtor's Business**

29.     Until April 19, 2021, the date of the Official Liquidation Order entered in the Cayman Proceeding and of the appointment of the Foreign Representatives as JOLs, the Debtor was regulated by the Cayman Islands Monetary Authority ("CIMA"), a regulatory body with jurisdiction over, and responsibility for, various regulatory functions. On April 22, 2021, a notice was issued by CIMA stating that the Company's insurance license had been revoked effective as of April 19, 2021.

30.     The Debtor conducted its insurance business through its two segregated portfolios, PASP and GASP. The principal activity of the Debtor's segregated portfolios was to insure events associated with human life. To this end, PASP offered unit-linked life insurance products, which combine insurance and investment benefits in a single plan, with the investment component tied to performance of the financial markets, and GASP offered health insurance products.

**B.      The Corporate and Organizational Structure as of the Petition Date**

31.     Before the Petition Date, the Debtor and the Affiliate Defendants operated under the brand or trade name the "PA Group" or "Premier Assurance Group" ("PA Group") and were indirectly owned and ultimately controlled by Cornide and Falcon. A chart showing the relevant ownership and management of the PA Group and related entities and business on or about the Petition Date is annexed as **Exhibit "A"** to the Complaint.

32.     As of the Petition Date, Cornide and Falcon each owned one-half of the equity of Defendant Beast Capital and Defendant PBS, Inc. Beast Capital owned 100% of the equity of

8

Defendant PAG LLC and of Defendant PA Marketing. Defendant PAG LLC owned 100% of the equity of the Debtor and Defendants Lyncpay, PAA LLC.

33.     With respect to Defendant PAGA Corp, Defendant Lyncpay assumed its name in multiple instances; for example, bank statements obtained by the Foreign Representatives identify the account holder as Defendant Lyncpay "doing business as" Defendant PAGA Corp. Whether as an assumed name of Defendant Lyncpay or as a Panamanian company, Defendant PAGA Corp is a wholly owned subsidiary of Defendant PAG LLC.

34.     At all relevant times before the Petition Date, Cornide and Falcon were Executive Directors of the Debtor. During this time, Cornide and Falcon acted in or held similar positions of official authority in or exercised actual control over the Affiliate Defendants. Cornide and Falcon have not resigned and remain as directors of the Debtor.

35.     At all relevant times, and at least until October 28, 2021, Jimenez was, acted as or held himself out to be, the Vice President of Finance or Chief Financial Officer ("CFO") of the Debtor. In these roles, Defendant Jimenez was responsible for the Debtor's financial and accounting functions. As a CPA, Defendant Jimenez is charged with knowledge of general accounting principles, internal controls and limits on self-dealing, and held to the standard of a reasonable and knowledgeable financial professional in respect of his dealings with the Debtor and third parties.

36.     At all relevant times, Jimenez was the CFO of Beast Capital, the Affiliate Defendants, and other entities owned or controlled, directly or indirectly, by Cornide and Falcon. Jimenez was at all relevant times beholden to Cornide and Falcon for his livelihood and professional career.

37.     In addition, at all relevant times before the Petition Date, and as of the date hereof, Jimenez was and remains the manager of Beast Capital LLC. Until May 26, 2021, Beast Capital was the manager of Defendant PAG LLC, and prior to the formation of Beast Capital in 2019, the Founder Defendants were managers of Defendant PAG LLC. From time to time before the Petition Date, the manager or managers of the Affiliate Defendants included one or more of the Founder Defendants, Defendant Jimenez, and Defendant Beast Capital.

38.     Moreover, at all relevant times, and until at least May 26, 2021, Cornide and Falcon had the right and power through their direct or indirect ownership of the Affiliate Defendants and the Debtor to exercise indirect control over the PA Group and effect corporate or managerial changes to implement that control.

**C.    Business Transactions between the Affiliate Defendants and the Debtor**

39.     The PA Group was structured for certain of the Affiliate Defendants to provide or appear to provide services and perform certain business functions for and on behalf of the Debtor.

40.     The purported purpose for this structure was to integrate the Affiliate Defendants with the Debtor as service providers and business divisions for the purported purpose of creating synergies and gaining efficiencies.

41.     These services and business functions included:

a.     Defendant Lyncpay provided administrative services to the Debtor, including collections of policy premiums, payment of commissions to so-called producers, insurance claims management and processing, and customer service, in the course of which services it acted as a fiduciary to the Debtor.

b.     Defendant PAA provided marketing and distribution services to GASP. These services included the development of marketing documentation, recruitment and training of and communications with "producers," and provision of web hosting services.

The Debtor (for and on behalf of GASP) paid PAA substantial sums for commission expenses and administrative fees.

    c.    Defendant PAG LLC was the direct parent of the Debtor and did not provide any discernable service or other business function to the Debtor.

    d.    Defendant PAGA Corp. provided administrative services to the Debtor (for and on behalf of PASP), including collections of policy premiums, payment of commissions to so-called producers, claims management and processing, and customer service; and purported to provide office space and payroll for certain employees of the Debtor (for and on behalf of Core and GASP).

    e.    Defendant PAM provided marketing and distribution services to the Debtor (for and on behalf of PASP). Among other things, "independent agents" of the Debtor (for and on behalf of PASP) contracted with PAM.

    f.    Defendant PBS provided general administrative services and accounting, finance, reporting, treasury and compliance services to the Debtor (for and on behalf of PASP and GASP).

42.    The terms and conditions upon which the Affiliate Defendants provided these services and business functions to the Debtor were directly or indirectly controlled and determined by the Insider Defendants, and the transactions between the Affiliate Defendants and the Debtor were carried out by the Insider Defendants or by employees of the Affiliate Defendants under the direct or indirect control and/or supervision of the Insider Defendants for and on behalf of the Affiliate Defendants and the Debtor.

43.    Indeed, the Debtor (whether for the Core, PASP or GASP) did not directly employ any individuals. Rather, each acted through the Insider Defendants and other individuals provided

through various agency, management or other relationships with the Affiliate Defendants or other affiliated entities owned and/or controlled by the Founder Defendants.

44.     Thus, both sides of the numerous transactions and funds transfers between the Debtor and Affiliate Defendants were conceived of, controlled and carried out by the same individuals, and ultimately were at the control and direction of or supervision by the Insider Defendants.

**D.     Books and Records of the Debtor and Affiliate Defendants Record their Transactions**

45.     The books and records of the Affiliate Defendants and the Debtor were created and maintained on a collective basis for the PA Group (the "Books and Records"). The Books and Records were created and maintained by or at the direction of the Insider Defendants, or by employees supplied by one or more of the Affiliate Defendants and under the direct or indirect control and/or supervision of the Insider Defendants.

46.     Among other things, the Books and Records record the affiliate transactions between the Affiliate Defendants and the Debtor. The Books and Records included general ledgers referable to the Core, PASP and GASP (each, respectively, "Core's General Ledger," "PASP's General Ledger" and "GASP's General Ledger"; collectively, the "General Ledgers").

47.     The General Ledgers state that the Affiliate Balances are owed to the Debtor for and on behalf of the Core, PASP or GASP, as applicable, by the Affiliate Defendants as of September 22, 2020, being on or about the date on which the Insider Defendants were made aware of the appointment of the Foreign Representatives.

48.     The General Ledgers categorize the Affiliate Balances as "Intercompany Balances," "Prepaid Expenses," "Premium Receivables" and "Premium Collected," and the balances therein reflect audited financial statement write offs ("AFS Write Off"). These categories were created and maintained by or at the direction of the Insider Defendants or by employees supplied by one

or more of the Affiliate Defendants and under the direct or indirect control and/or supervision of the Insider Defendants.

49.    More generally, as part of the Books and Records, the General Ledgers were created and maintained by or at the direction of the Insider Defendants, or by employees supplied by one or more of the Affiliate Defendants and under the direct or indirect control and/or supervision of the Insider Defendants.

50.    On the basis of those Books and Records, the Affiliate Defendants agree that the Affiliate Balances are owed to the Debtor (for and on behalf of the Core, PASP or GASP), respectively, and the Affiliate Defendants have expressly or impliedly promised to repay the Affiliate Balances. This agreement and promise is manifested in the General Ledgers because of the common ownership and control of the Debtor and the Affiliate Defendants by the Founder Defendants, the control by and duties owed to these entities by Defendant Jimenez as their common CFO, and/or the employees supplied to the Debtor by the Affiliate Defendants.

51.    The Affiliate Balances are confirmed by audited financial statements of the Debtor, dated December 31, 2019 (the "2019 Audited Financials"), which were approved by the Founder Defendants as members of the Debtor's Board on July 31, 2020. The Affiliate Balances are also confirmed by a management representation letter, dated July 31, 2020 (the "2020 MRL"), signed by the Founder Defendants. While serving as CFO of both the Debtor and Affiliate Defendants, Defendant Jimenez oversaw the preparation of and approved of the 2019 Audited Financials, and while Defendant Jimenez was serving in those same capacities the 2020 MRL was issued. Upon information and belief, the records of the Affiliate Defendants also confirm the Affiliate Balances.

**E.     Use of the Debtor as a "Piggy Bank" for the Benefit of the Affiliate Defendants and Ultimately the Founder Defendants**

52.     Notwithstanding the services and business functions provided by the Affiliate Defendants to the Debtor from time to time, a significant – if not the primary – purpose for and use of the Affiliate Defendants in the business of and their integration with the Debtor was to divert and dissipate the Debtor's assets for the benefit of the Founder Defendants.

53.     For example, the Insider Defendants have admitted to third-party financial professionals that approximately $12 million in purported marketing fees paid to Defendant PA Marketing were not actually spent on marketing referable to PASP. Rather, these "marketing fees" were paid to Defendant PA Marketing as an instrumentality for transferring capital out of the Debtor for the ultimate benefit of the Founder Defendants.

54.     For a second example, the Debtor (for and on behalf of GASP) paid commission expenses and administrative fees to Defendant PAA for no business purpose and ultimately for the benefit of the Founder Defendants.

55.     As a third example, certain of the Affiliate Defendants, such as PAGA Corp and PBS Inc., purportedly functioned solely as service providers. There is no business reason for the Debtor to have booked such substantial receivables owed by these service providers. Stated differently, there is no valid business reason for these service providers to **owe the Debtor** such substantial sums of money when the nature of the relationship was such that they ostensibly were providing services **to the Debtor** in exchange for payments made or to be made **by the Debtor**.

56.     As a fourth example, PAG LLC carried Intercompany Balances owing to the Debtor (for and on behalf of the Core and PASP) for no business purpose.

14

57.     As a fifth example, the AFS Write Offs are for the benefit of certain Affiliate Defendants that the Insider Defendants subsequently caused the Debtor to continue to do business with and incur additional balances.

58.     As a sixth example, the Founder Defendants caused the creation of Defendant Providence's protected cell (PAPR) as part of a "bust out" of PASP's insurance business so as to evade the regulatory scrutiny of CIMA, and provided PAPR's start-up costs and other funding from the Debtor (referable to PASP) in exchange for no value.

59.     More generally, the Debtor was used as a "piggy bank" by and for the benefit of the Founder Defendants, and the Affiliate Defendants were but one of the instrumentalities by which value was improperly and wrongfully extracted from the Debtor. The Affiliate Defendants provided cover for this extraction with a mix of actual business transactions and transactions for no business purpose.

60.     These extractions were recorded in the Books and Records, including the General Ledgers, as (i) significant unexplained Intercompany Balances and AFS Write Offs, (ii) Prepaid Expenses for which no services, goods or other value ever delivered, (iii) Premiums Receivable and Collected never turned over, and (iv) substantial transactions recorded with no business purpose. That is, these extractions were recorded as assets on the Debtor's balance sheet so as to conceal from regulators, auditors, and GASP's policyholders and PASP's participants that the Debtor had been denuded of monies and other real assets to the ultimate benefit of the Founder Defendants and the detriment of GASP's policyholders and PASP's participants.

61.     Further, these extractions were constructed in a manner intended to circumvent regulatory restrictions and the Debtor's own policy governing the payment of dividends to or for the ultimate benefit of the Founder Defendants. As a regulated insurance company in the Cayman

Islands, the Debtor was required to seek approval from CIMA prior to making dividend payments to its shareholder. The Debtor's dividend policy since at least 2015 included that "[i]t is also understood and agreed that the [Debtor] may not, without the written approval of the [CIMA], distribute profits (including a dividend)." Through the use of the Affiliated Defendants, the Insider Defendants created an opportunity to bypass the CIMA approval process in order to extract capital from the Debtor for their own personal benefit without regulatory oversight.

62.     Even when the Founder Defendants' predations upon the Debtor and its participants were uncovered by regulators, the extractions of capital from the Debtor continued. The Debtor came under regulatory scrutiny relating to use of the Affiliate Defendants in 2017, when CIMA performed an onsite inspection of the Debtor. On December 29, 2017, CIMA issued a report that details sixty-one (61) remediation actions required by the Debtor, one of which actions was to:

> [E]nsure that the current outstanding balances/amount due from affiliates and related parties pertaining to PASP and [GASP], which as at December 31, 2016 amounted to US$4,374,757 and US$1,523,507 respectively, are settled in full within twelve months of issue of the Final Report. Going forward, such balances, if any, should be very minimal and should not remain unpaid for a period exceeding twelve months.

63.     A further required remediation action required by CIMA was that

> Considering the high level of related party transactions and outsourcing of material functions, the Licensee should establish and implement a related party policy which outlines principles that would govern related party balances and transactions. Such policy should ensure that transactions with related parties are conducted at arms-length and should outline circumstances under which related party balances can arise, approval authority of such balances, oversight requirements, as well as timelines for settlement of such balances.

64.     To the Foreign Representatives' knowledge, such a policy was never implemented. Rather, related party transactions continued, and, *inter alia*, the Affiliate Balances ballooned from $5,898,264 to $28,345,149.02 (i.e., the current amount of the Affiliate Balances). Thus, rather than heed the admonitions and regulatory rulings of CIMA to undertake the remediation actions and

settle that initial balance in full within twelve months, the Founder Defendants accelerated their pattern of wrongdoing over the next two and one-half years.

**F.    Post-Petition Transactions**

65.    After the Petition Date, and during the pendency of a Temporary Restraining Order [Ch. 15 ECF No. 8] (the "TRO") entered by the Bankruptcy Court, which among other things suspended the right of any person or entity to transfer, encumber or otherwise dispose of any assets of the Debtor and which Defendant Lyncpay and the Insider Defendants had notice, Defendant Lyncpay continued to collect premiums which were not turned over to the Debtor (for and on behalf of PASP). Among other things, the collection of these premiums from September 23, 2020 to October 26, 2020 were in knowing violation of the TRO by Defendant Lyncpay and the Insider Defendants.

**G.    Post-Petition Restructuring of and other Changes to PA Group**

66.    Effective on or about May 26, 2021, the Founder Defendants caused the restructuring of the ownership of and certain management positions within the PA Group. Among other things, Beast Capital was removed as the owner and member of PAG LLC. It was replaced by the Paradigm Irrevocable Trust and the Empyrean Irrevocable Trust who became the 50/50 owners and Authorized Members of PAG LLC. In addition, Beast Capital was removed as the manager of PAG LLC, and was replaced by Defendant Jimenez and Simon Amich as PAG LLC's managers. A chart showing the relevant ownership and management of the PA Group following this restructuring is annexed as **Exhibit "B"** to the Complaint.

67.    Documents provided by PAG LLC in discovery show that Stephanie C. Falcon, the wife of Mr. Falcon is the named as the "Primary Beneficiary" of the Empyrean Irrevocable Trust and that Lizette Vasseur Cornide, the wife of Mr. Cornide is named as the "Primary Beneficiary" of the Paradigm Irrevocable Trust. Each of those Trusts provides that during the life of the Primary

17

Beneficiary and the Primary Beneficiary's spouse [i.e. Mr Falcon / Mr Cornide], the Trustee shall "pay out of the net income and/or principal of the trust estate to or for the benefit of such one or more of the Primary Beneficiary's spouse [i.e. Mr Falcon/ Mr Cornide] and Primary Beneficiary's issue ...." Upon the death of the Primary Beneficiary and the Primary Beneficiary's spouse, the trust estate is allocated to the Primary Beneficiary's issue, per stirpes.

68.     On or about April 29, 2022, Articles of Dissolution for Defendant PAA were filed with the Secretary of State of Florida and signed by Defendant Jimenez. Defendant Jimenez was appointed to wind up the activities and affairs of Defendant PAA. Its purported dissolution occurred at a time when it, Defendant Jimenez and the Founder Defendants knew that Defendant PAA owed the Debtor and/or its segregated portfolios due and outstanding debts and was without notice to the Foreign Representatives, and was in violation of Florida law.

## COUNT ONE
### Account Stated
(against Defendant Lyncpay)

69.     The allegations of paragraphs 1 through 68 are incorporated and realleged herein.

70.     The Debtor (for and on behalf of the Core, PASP and GASP) and Defendant Lyncpay had business transactions between them.

71.     The Debtor and Defendant Lyncpay agree that the following balances, as recorded in the General Ledgers, are correct and due, and Defendant Lyncpay has agreed to pay these balances back to the Debtor for and on behalf of:

      a.     the Core for Intercompany Balances in the amount of $183,531.57 and for AFS Write Off in the amount of $16,214.00;

      b.     PASP for Premium Receivable in the amount of $7,079,900.93, for Premium Collected in the amount of $2,326,599.27 and for AFS Write Off in the amount of $1,511,139.00; and

18

c. GASP for Premium Receivable in the amount of $3,011,340.59 and for Prepaid Expenses in the amount of $571,520.05.

72. In addition, the Foreign Representatives rendered a statement of the balance to Defendant Lyncpay by way of a demand dated August 13, 2021. Defendant Lyncpay did not object to the demand, nor did Lyncpay tender any portion of the outstanding sum set forth in that demand. A true and correct copy of the demand to Lyncpay for repayment of the $12,373,646.14[1] is attached hereto as **Composite Exhibit "C."**

73. Accordingly, Defendant Lyncpay owes the Debtor: (a) $199,745.57 (for and on behalf of the Core), (b) $10,917,639.20 (for and on behalf of PASP) and (c) $3,582,860.64 (for and on behalf of GASP), totaling the amount of $14,700,245.41.

74. WHEREFORE, the Foreign Representatives demand judgment for damages of no less than $14,700,245.41 against Defendant Lyncpay, together with attorneys' fees and costs, interest, and for any and all other relief that this Court may deem just and proper.

**COUNT TWO**
**Account Stated**
(against Defendant PAA LLC)

75. The allegations of paragraphs 1 through 68 are incorporated and realleged herein.

76. The Debtor (for and on behalf of GASP) and Defendant PAA LLC had business transactions between them.

---

[1] These demands did not include the amount of $2,326,599.27 set forth in paragraph 71(b) above, which amount is for premiums collected after the Petition Date from September 23, 2020 to October 26, 2020 and which amount is the difference between the amounts set forth in this paragraph 72 and paragraphs 73 and 74.

77.     The Debtor and Defendant PAA LLC agree that the balance, as recorded in GASP's General Ledger, is correct and due, and Defendant PAA LLC has agreed to pay the balance back to the Debtor (for and on behalf of GASP) for Prepaid Expenses in the amount of $6,075,420.21.

78.     In addition, the Foreign Representatives rendered a statement of the balance to Defendant PAA LLC by way of a demand dated August 13, 2021. Defendant PAA LLC did not object to the demand, nor did Defendant PAA LLC tender any portion of the outstanding sum set forth in that demand. A true and correct copy of the demand to Defendant PAA LLC for repayment of the $6,075,420.21 is attached hereto as **Composite Exhibit "D."**

79.     Accordingly, Defendant PAA LLC owes the Debtor (for and on behalf of GASP) $6,075,420.21.

80.     WHEREFORE, the Foreign Representatives demand judgment for damages of no less than $6,075,420.21 against Defendant PAA LLC, together with attorneys' fees and costs, interest, and for any and all other relief that this Court may deem just and proper.

## COUNT THREE
### Account Stated
(against Defendant PAG LLC)

81.     The allegations of paragraphs 1 through 68 are incorporated and realleged herein.

82.     The Debtor (for and on behalf of the Core and PASP) and PAG LLC had business transactions between them.

83.     The Debtor and Defendant PAG LLC agree that the following balances, as recorded in the Core's and PASP's General Ledgers, are correct and due, and Defendant PAG LLC has agreed to pay these balances back to the Debtor for and on behalf of:

      a.     the Core for Intercompany Balances in the amount of $51,878.25; and

      b.     PASP for Intercompany Balances in the amount of $3,300,525.10.

84.     In addition, the Foreign Representatives rendered two separate statements of the balances for and on behalf of the Core and PASP to Defendant PAG LLC by way of demands dated August 13, 2021. Defendant PAG LLC did not object to the demands, nor did Defendant PAG LLC tender any portion of the outstanding sum set forth in the demands. A true and correct copy of the demands to PAG LLC for repayment of the $3,352,403.35 is attached hereto as **Composite Exhibit "E."**

85.     Accordingly, Defendant PAG LLC owes the Debtor (for and on behalf of the Core) $51,878.25 and (for and on behalf of PASP) $3,00,525.10, totaling the amount of $3,352,403.35.

86.     WHEREFORE, the Foreign Representatives demand judgment for damages of no less than $3,352,403.35 against Defendant PAG LLC, together with attorneys' fees and costs, interest, and for any and all other relief that this Court may deem just and proper.

**COUNT FOUR**
**Account Stated**
(against Defendant PAGA Corp)

87.     The allegations of paragraphs 1 through 68 are incorporated and realleged herein.

88.     The Debtor (for and on behalf of the Core and PASP) had business transactions between them.

89.     The Debtor and Defendant PAGA Corp agree that that the following balances, as recorded in the Core's and PASP's General Ledgers, are correct and due, and Defendant PAGA Corp has agreed to pay these balances back to the Debtor for and on behalf of:

    a.     the Core for Intercompany Balances in the amount of $34,299.34; and

    b.     PASP for Intercompany Balances in the amount of $837,277.30.

90.     In addition, the Foreign Representatives rendered a statement of the balance to Defendant PAGA Corp by way of a demand dated August 13, 2021. Defendant PAGA Corp did not object to the demand, nor did Defendant PAGA Corp tender any portion of the outstanding

sum set forth in that demand. A true and correct copy of the demands to Defendant PAGA Corp for repayment of the $871,576.64 is attached hereto as **Composite Exhibit "F."**

91.     Accordingly, Defendant PAGA Corp owes the Debtor (for and on behalf of the Core) $34,299.34 and (for and on behalf of PASP) $837,277.30, totalling the amount of $871,576.64.

92.     WHEREFORE, the Foreign Representatives demand judgment for damages of no less than $871,576.64 against Defendant PAGA Corp, together with attorneys' fees and costs, interest, and for any and all other relief that this Court may deem just and proper.

**COUNT FIVE**
**<u>Account Stated</u>**
(against Defendant PA Marketing)

93.     The allegations of paragraphs 1 through 68 are incorporated and realleged herein.

94.     The Debtor (for and on behalf of PASP) and PA Marketing had business transactions between them.

95.     The Debtor and Defendant PA Marketing agree that the following balances, as recorded in PASP's General Ledger, are correct and due, and Defendant PA Marketing has agreed to pay these balances to the Debtor (for and on behalf of PASP):

      a.     for Intercompany Balances in the amount of $557,219.20; and

      b.     for Prepaid Expenses in the amount of $300,000.00.

96.     In addition, the Foreign Representatives rendered a statement of the balance to Defendant PA Marketing by way of a demand dated August 13, 2021. Defendant PA Marketing did not object to the demand, nor did PA Marketing tender any portion of the outstanding sum set forth in that demand. A true and correct copy of the demand to Defendant PA Marketing for repayment of the $857,219.20 is attached hereto as **Exhibit "G."**

97.     Accordingly, Defendant PA Marketing owes the Debtor (for and on behalf of PASP) $857,219.20.

22

98.     WHEREFORE, the Foreign Representatives demand judgment for damages of no less than $857,219.20 against Defendant PA Marketing, together with attorneys' fees and costs, interest, and for any and all other relief that this Court may deem just and proper.

## COUNT SIX
### Account Stated
(against Defendant PBS, Inc.)

99.     The allegations of paragraphs 1 through 68 are incorporated and realleged herein.

100.    The Debtor (for and on behalf of the Core and PASP) and Defendant PBS Inc. had business transactions between them.

101.    The Debtor and Defendant PBS Inc. agree that the following balances, as recorded in the Core's and PASP's General Ledgers, are correct and due, and Defendant PBS Inc. has agreed to pay these balances back to the Debtor for and on behalf of:

a.      the Core for Intercompany Balances in the amount of $250,689.22, and for an AFS Write Off in the amount of $448,361.00; and

b.      PASP for Intercompany Balances in the amount of $898,778.99, and for an AFS Write Off in the amount of $890,455.00.

102.    In addition, the Foreign Representatives rendered a statement of the balance to Defendant PBS Inc. by way of a demand dated August 13, 2021. Defendant PBS Inc. did not object to the demand, nor did Defendant PBS, Inc. tender any portion of the outstanding sum set forth in that demand. A true and correct copy of the demands to Defendant PBS Inc. for repayment of a total of $2,488,284.21 is attached hereto as **Composite Exhibit "H."**

103.    Accordingly, Defendant PBS Inc. owes the Debtor (for and on behalf of the Core) $699,050.22 and (for and on behalf of PASP) $1,789,233.99, totalling the amount of $2,488,284.21.

104.    WHEREFORE, the Foreign Representatives demand judgment for damages no less than $2,488,284.21 against Defendant PBS Inc., together with attorneys' fees and costs, interest, and for any and all other relief that this Court may deem just and proper.

## COUNT SEVEN
## Unjust Enrichment
(against Defendant Lyncpay)

105.    The allegations of paragraphs 1 through 68 are incorporated and realleged herein.

106.    The Debtor (for and on behalf of the Core, PASP and GASP) made payments and conferred other benefits upon Defendant Lyncpay as follows:

    a.    $183,531.57 recorded in the Core's General Ledger as Intercompany Balances, and $16,214.00 recorded as AFS Write Off;

    b.    $7,079,900.93 recorded in PASP's General Ledger as Premium Receivable, $2,326,599.27 recorded as Premium Collected, and $1,511,139.00 recorded as AFS Write Off;

    c.    $3,011,340.59 recorded in GASP's General Ledger as Premium Receivable and $571,520.05 recorded as Prepaid Expenses.

107.    Defendant Lyncpay had knowledge of, and has voluntarily accepted and retained these benefits, which have an aggregate value of not less than $14,700,245.41.

108.    The circumstances render Defendant Lyncpay's retention of these benefits inequitable unless Defendant Lyncpay pays the Foreign Representatives the value of these benefits.

109.    The Foreign Representatives are entitled to damages as a result of Defendant Lyncpay's unjust enrichment, including restitution and disgorgement of all benefits unlawfully accepted by Defendant Lyncpay, in an amount not less than $14,700,245.41.

110.    WHEREFORE, the Foreign Representatives demand judgment against Defendant Lyncpay for damages, together with attorneys' fees and costs, interest, and for any and all other relief that this Court may deem just and proper.

## COUNT EIGHT
## Unjust Enrichment
(against Defendant PAA LLC)

111.    The allegations of paragraphs 1 through 68 are incorporated and realleged herein.

112.    The Debtor (for and on behalf of GASP) made payments and conferred other benefits upon Defendant PAA LLC as follows:

a.    $6,075,420.21 recorded in GASP's General Ledger as Prepaid Expenses; and

b.    at least $1,922,679.27 purportedly for commission expenses and administrative fees.

113.    Defendant PAA LLC had knowledge of, and has voluntarily accepted and retained these benefits, which have an aggregate value of not less than $7,998,099.48.

114.    The circumstances render Defendant PAA LLC's retention of these benefits inequitable unless Defendant PAA LLC pays the Foreign Representatives the value of these benefits.

115.    The Foreign Representatives are entitled to damages as a result of Defendant PAA LLC's unjust enrichment, including restitution and disgorgement of all benefits unlawfully accepted by Defendant PAA LLC, in an amount not less than $7,998,099.48.

116.    WHEREFORE, the Foreign Representatives demand judgment against Defendant PAA LLC for damages, together with attorneys' fees and costs, interest, and for any and all other relief that this Court may deem just and proper.

**COUNT NINE**
**Unjust Enrichment**
(against Defendant PAG LLC)

117.    The allegations of paragraphs 1 through 68 are incorporated and realleged herein.

118.    The Debtor (for and on behalf of the Core and PASP) made payments and conferred other benefits upon Defendant PAG LLC as follows:

        a.    $51,878.25 recorded in the Core's General Ledger as Intercompany Balances; and

        b.    $3,300,525.10, recorded in PASP's General Ledger as Intercompany Balances.

119.    Defendant PAG LLC had knowledge of, and has voluntarily accepted and retained these benefits, which have an aggregate value of not less than $3,352,403.35.

120.    The circumstances render Defendant PAG LLC's retention of these benefits inequitable unless Defendant PAG LLC pays the Foreign Representatives the value of these benefits.

121.    The Foreign Representatives are entitled to damages as a result of Defendant PAG LLC's unjust enrichment, including restitution and disgorgement of all benefits unlawfully accepted by Defendant PAG LLC, in an amount not less than $3,352,403.35.

122.    WHEREFORE, the Foreign Representatives demand judgment against Defendant PAG LLC for damages, together with attorneys' fees and costs, interest, and for any and all other relief that this Court may deem just and proper.

**COUNT TEN**
**Unjust Enrichment**
(against Defendant PAGA Corp)

123.    The allegations of paragraphs 1 through 68 are incorporated and realleged herein.

26

124.    The Debtor (for and on behalf of the Core and PASP) made payments and conferred other benefits upon Defendant PAGA Corp as follows:

a.    $34,299.34, recorded in the Core's General Ledger as Intercompany Balances; and

b.    $837,277.30, recorded in PASP's General Ledger as Intercompany Balances.

125.    Defendant PAGA Corp had knowledge of, and has voluntarily accepted and retained these benefits, which have an aggregate value of not less than $871,576.64.

126.    The circumstances render Defendant PAGA Corp retention of these benefits inequitable unless Defendant PAGA Corp pays the Foreign Representatives the value of these benefits.

127.    The Foreign Representatives are entitled to damages as a result of Defendant PAGA Corp's unjust enrichment, including restitution and disgorgement of all benefits unlawfully accepted by Defendant PAGA Corp, in an amount not less than $871,576.64.

128.    WHEREFORE, the Foreign Representatives demand judgment against Defendant PAGA Corp for damages, together with attorneys' fees and costs, interest, and for any and all other relief that this Court may deem just and proper.

**COUNT ELEVEN**
**<u>Unjust Enrichment</u>**
(against Defendant PA Marketing)

129.    The allegations of paragraphs 1 through 68 are incorporated and realleged herein.

130.    The Debtor (for and on behalf of PASP) made payments and conferred other benefits upon Defendant PA Marketing as follows:

a.    $557,219.20 recorded in PASP's General Ledger as Intercompany Balances;

b.    $300,000.00 recorded in PASP's General Ledger as Prepaid Expense; and

27

       c.      at least $16,860,000.00 recorded in PASP's General Ledger as a payment to Defendant PA Marketing without any business purpose.

131.   Defendant PA Marketing had knowledge of, and has voluntarily accepted and retained these benefits, which have an aggregate value of not less than $17,717,219.20.

132.   The circumstances render Defendant PA Marketing's retention of these benefits inequitable unless Defendant PA Marketing pays the Foreign Representatives the value of these benefits.

133.   The Foreign Representatives are entitled to damages as a result of Defendant PA Marketing's unjust enrichment, including restitution and disgorgement of all benefits unlawfully accepted by Defendant PA Marketing, in an amount not less than $17,717,219.20.

134.   WHEREFORE, the Foreign Representatives demand judgment against Defendant PA Marketing for damages, together with attorneys' fees and costs, interest, and for any and all other relief that this Court may deem just and proper.

## COUNT TWELVE
## Unjust Enrichment
(against Defendant PBS, Inc.)

135.   The allegations of paragraphs 1 through 68 are incorporated and realleged herein.

136.   The Debtor (for and on behalf of the Core and PASP) made payments and conferred other benefits upon Defendant PBS, Inc. as follows:

       a.      $250,689.22 recorded in the Core's General Ledger as Intercompany Balances, and $448,361.00 recorded as AFS Write Off; and

       b.      $898,778.99 recorded in PASP's General Ledger as Intercompany Balances, and $890,455.00 recorded as AFS Write Off.

137.   Defendant PBS, Inc. had knowledge of, and has voluntarily accepted and retained these benefits, which have an aggregate value of not less than $2,488,284.21.

138.    The circumstances render Defendant PBS, Inc.'s retention of these benefits inequitable unless Defendant PBS, Inc. pays the Foreign Representatives the value of these benefits.

139.    The Foreign Representatives are entitled to damages as a result of Defendant PBS, Inc.'s unjust enrichment, including restitution and disgorgement of all benefits unlawfully accepted by Defendant PBS, Inc., in an amount not less than $2,488,284.21.

140.    WHEREFORE, the Foreign Representatives demand judgment against Defendant PBS, Inc. for damages, together with attorneys' fees and costs, interest, and for any and all other relief that this Court may deem just and proper.

**COUNT THIRTEEN**
**Unjust Enrichment**
(against Defendant Providence (for and on behalf of PAPR))

141.    The allegations of paragraphs 1 through 68 are incorporated and realleged herein.

142.    The Debtor (for and on behalf of PASP) made payments and conferred other benefits upon Defendant Providence (for and on behalf of PAPR) as follows:

a.    an April 30, 2020 debit to record the liability of Providence (for and on behalf of PAPR) to PASP for commission and PA Marketing fees for March and April 2020 in the amount of $115,139.46;

b.    an April 30, 2020 debit to record the liability of Providence (for and on behalf of PAPR) to PASP for commission and PA Marketing fees for March and April 2020 in the amount of $254,750.83;

c.    a June 30, 2020 debit to record the liability of Providence (for and on behalf of PAPR) to PASP for commission and PA Marketing fees for May 2020 in the amount of $105,440.43;

d.    a June 30, 2020 debit to record the liability of Providence (for and on behalf of PAPR) to PASP for commission and PA Marketing fees for June 2020 in the amount of $229,163.42; and

e.    an August 31, 2020 debit to record the liability of Providence (for and on behalf of PAPR) to PASP for other costs and allocations in the amount of $604,819.82.

143.    Defendant Providence (for and on behalf of PAPR) had knowledge of, and has voluntarily accepted and retained these benefits, which have an aggregate value of not less than $1,309,313.96.

144.    The circumstances render the retention of these benefits by Defendant Providence (for and on behalf of PAPR) inequitable unless Defendant Providence (for and on behalf of PAPR) pays the Foreign Representatives the value of these benefits.

145.    The Foreign Representatives are entitled to damages as a result of unjust enrichment of Defendant Providence (for and on behalf of PAPR), including restitution and disgorgement of all benefits unlawfully accepted by Defendant Providence (for and on behalf of PAPR), in an amount not less than $1,309,313.96.

146.    WHEREFORE, the Foreign Representatives demand judgment against Defendant Providence (for and on behalf of PAPR) for damages, together with attorneys' fees and costs, interest, and for any and all other relief that this Court may deem just and proper.

## COUNT FOURTEEN
### Unjust Enrichment
(against the Founder Defendants and Defendant Beast Capital)

147.    The allegations of paragraphs 1 through 68 are incorporated and realleged herein.

148.    The Debtor (for and on behalf of the Core, PASP and GASP) conferred benefits upon the Founder Defendants and Defendant Beast Capital indirectly and/or through the Affiliate

Defendants as conduits for value derived from the Related-Party Balances, which have an aggregate value in the millions of dollars in a final amount to be determined at trial.

149.    The Founder Defendants and Defendant Beast Capital had knowledge of, and voluntarily accepted and retained these benefits.

150.    The circumstances render retention of these benefits by the Founder Defendants and Defendant Beast Capital inequitable unless these Defendants pays the Foreign Representatives the value of these benefits.

151.    The Foreign Representatives are entitled to damages as a result of the Founder Defendants and Defendant Beast Capital's unjust enrichment, including restitution and disgorgement of all benefits unlawfully accepted by the Founder Defendants and Defendant Beast Capital, in an amount to be determined at trial.

152.    WHEREFORE, the Foreign Representatives demand judgment against the Founder Defendants and Defendant Beast Capital for damages, together with attorneys' fees and costs, interest, and for any and all other relief that this Court may deem just and proper.

## COUNT FIFTEEN
## BREACHES OF FIDUCIARY DUTY UNDER CAYMAN ISLANDS LAW
(against the Insider Defendants)

153.    The allegations of paragraphs 1 through 68 are incorporated and realleged herein.

154.    At all material times, each of the Founder Defendants in their capacity as directors of the Debtor, and Defendant Jimenez, who over a period of years served as Vice President of Finance and then CFO of the Debtor, owed fiduciary duties to the Debtor arising under and governed by the laws of the Cayman Islands, including, *inter alia*:

a.    to act in good faith in the best interests of the Debtor;

b.    to act for a proper purpose;

c.      not to place themselves in a position where their personal interests or the interests of others might conflict with those of the Debtor; and

d.      not to profit personally or receive unauthorized benefits from their positions from third parties or from the use of the Debtor's property.

155.    The Insider Defendants breached their fiduciary duties to the Debtor by causing the Debtor to undertake transactions for either no business purpose or at less than arm's length with the Affiliate Defendants for the direct or indirect benefit of the Founder Defendants. In particular, and in direct violation of the duties identified immediately above, the Insider Defendants:

a.      failed to act in good faith in the best interests of the Debtor, and/or caused the Debtor to incur the Related-Party Balances or assisted therein without any (or any adequate) consideration and/or business purpose, without providing for adequate means for repayment thereof, and/or to and for the personal benefit and profit of the Founder Defendants and the continued gainful employment and compensation of Defendant Jimenez;

b.      acted for the improper purposes of looting the Debtor, circumventing the Debtor's dividend policy and CIMA's required remediation actions, and/or concealing these matters and the benefits/profits illicitly derived therefrom;

c.      placed themselves repeatedly, with respect to each transaction between an Affiliate Defendant and the Debtor giving rise to a portion of the Related-Party Balances and with respect to amounts the Founder Defendants received that derived from the Related-Party Balances, in a position where the personal interests of the Founder Defendants as the ultimate beneficiaries of the Related-Party Balances, including, but not limited to, as recipients of monies derived from the Related-Party Balances, would conflict

with those of the Debtor that was made to engage in transactions for no business purpose or without any (or any adequate) consideration, for which inadequate means of repayment were made, and/or for improper purposes, all while the Founder Defendants reaped the profits and other benefits of the Related-Party Transfers;

        d.      directly and indirectly profited and received unauthorized (and undisclosed) benefits from their positions through the use, misuse, misappropriation and investment of the Debtor's property giving rise to the Related-Party Balances. These acts of misuse, misappropriation, non-disclosure, self-dealing and personal enrichment at the expense of the Debtor through the Related-Party Balances, violated the fiduciary duties owed by officers and directors of a Cayman Islands company under the laws of the Cayman Islands.

156.    Further or alternatively, Defendant Jimenez failed to exercise independent judgment and/or fettered his discretion and/or failed to act in the best interests of the Debtor by acting on the instructions of the Founder Defendants and for their personal benefit in directing and/or implementing the transactions giving rise to the Related-Party Balances, which transactions resulted in the looting of the Debtor, in breach of his fiduciary duties owed to the Debtor.

157.    The Debtor has suffered damages as a result of those breaches, which caused the Debtor to be deprived of the assets that derived from the Related-Party Balances and were diverted from the Debtor, and the profits, gains and other benefits derived from the use of the Debtor's assets derived from the Related-Party Balances by Defendant Providence (for and on behalf of PAPR), the other Affiliate Defendants, Defendant Beast Capital and ultimately the Founder Defendants.

158.    As a result of the breaches set out above, the Debtor has suffered loss and damage, for which the Insider Defendants are liable to pay damages or equitable compensation in an amount

to be proved at trial. Further or alternatively, the Insider Defendants are liable to account to the Debtor for any profits made from their breaches of fiduciary duty. Further or alternatively, any funds or property received and retained by the Founder Defendants in breach of fiduciary duty and/or the traceable proceeds of the same and/or any profits thereon and/or profits made by them as a result of such breaches, are held on constructive trust for the Debtor. Further or alternatively, the Debtor seeks an order for further or other relief (including all necessary accounts and inquiries to determine the amount of any damages and/or profits payable by the Insider Defendants to the Debtor).

159.    WHEREFORE, the Foreign Representatives demand judgment against the Insider Defendants for damages, together with attorneys' fees and costs, interest, and for any and all other relief that this Court may deem just and proper.

**COUNT SIXTEEN**
**Accounting**
(against all Defendants)

160.    The allegations of paragraphs 1 through 68 are incorporated and realleged herein.

161.    This Count is pleaded in the alternative, and relief is sought only in the event that the Court may find that as to an Affiliate Defendant there exists a bona fide dispute regarding the amount of the Related-Party Balances.

162.    The Debtor and the Defendants share a fiduciary or confidential relationship.

163.    The Debtor and the Affiliate and Founder Defendants entered into a series of complex transactions involving extensive, mutual, or complicated accounts. The Books and Records that the Foreign Representatives have had the opportunity to review are largely co-mingled among the Affiliate Defendants and the Debtor and are difficult to decipher. For example, many entries in the General Ledgers are ambiguous or vague providing descriptions, such as "to cover expenses," "funding for expenses," "advance for expenses," "auto intercompany adjustment,"

"corp assess," "reclass," and "IC analysis and adjustments," without sufficiently identifying the subject matter or other contextual information so as to enable the Foreign Representatives to know what the entries actually mean and relate to.

164.    Accordingly, to the extent that any Defendant or Defendants can establish that the amounts due and owing to the Debtor set forth in Counts One through Six are not owed and/or different amounts are owed, the Foreign Representatives are entitled to an accounting detailing all advances from the Debtor to each Defendant, as well as any and all repayments to the Debtor from each Defendant. Under such circumstances that any one Defendant can establish that the internal books and records maintained, shared, and relied upon by both the Debtor and Defendants are inaccurate, the relationships between the Debtor and Defendants involve extensive and complicated accounts, and it is not evident that any remedy at law is a full an adequate remedy.

165.    WHEREFORE, alternatively and not in lieu of the relief sought in each of the prior Counts of this Complaint, Plaintiffs demand (i) an accounting reflecting all advances from the Debtor to each Defendant and any repayments to the Debtor from each Defendant, and any other transactions related to the monies the Foreign Representatives maintain are owed to the Debtor, (ii) restitution, disgorgement and other equitable relief so as to render complete justice between the Debtor and the Defendants, and (iii) any and all other relief that this Court may deem just and proper.

### STATEMENT OF RELIANCE ON FOREIGN SOURCES OF LAW

Pursuant to Federal Rules of Civil Procedure 44.1, made applicable to this adversary proceeding by Bankruptcy Rule 9017, the Plaintiffs gives notice that this Complaint raises issues of foreign law, specifically that of the Cayman Islands.

## **RESERVATION OF RIGHTS**

The Foreign Representatives' investigation and efforts to discover into the matters alleged in the Complaint and assert additional claims against the named Defendants remain ongoing. As the Court is aware, certain of the Defendants and their affiliates have appeared in the Chapter 15 Case and acted to delay and obstruct this investigation through the repeated filing of objections and motions to quash subpoenas and for protective orders -- each of which objections and motions has been overruled, denied or withdrawn -- and protracted litigation over access to certain of the computer data captured by the Plaintiffs upon their appointment as Foreign Representatives. Accordingly, Plaintiffs reserve their right to amend this Complaint to add, modify or supplement factual allegations, legal theories, and causes of action, and to commence additional actions or proceedings as may be necessary or appropriate to hold the Defendants and their affiliates accountable for the fraud, defalcation, self-dealing and other harms inflicted by the Defendants and related parties on the Debtor and its participants.

*[Remainder of Page Intentionally Left Blank.]*

## PRAYER FOR RELIEF

WHEREFORE, the Foreign Representatives pray for relief and judgment against the Defendants for damages, together with attorneys' fees and costs and interest, restitution and disgorgement, and an accounting, all as more fully set forth in this Complaint; and for any and all other relief that this Court may deem just and proper

Dated: September 19, 2022                    Respectfully submitted,

                                      **BAKER & MCKENZIE LLP**

                                      By: *John R. Dodd*
                                      Mark D. Bloom
                                      FL Bar No. 303836
                                      Mark.Bloom@bakermckenzie.com
                                      John R. Dodd
                                      FL Bar No. 38091
                                      John.Dodd@bakermckenzie.com
                                      1111 Brickell Avenue
                                      Suite 1700
                                      Miami, Florida 33131
                                      Telephone: (305) 789-8900
                                      Facsimile: (305) 789-8953